UNITED STATES DSITRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

VELERON HOLDING, B.V.,

    Plaintiff,

-against-

MORGAN STANLEY; MORGAN STANLEY
CAPITAL SERVICES, INC., MORGAN STANLEY
& CO., INCORPORATED; MORGAN STANLEY
& CO;

    Defendants.

------------------------------------------------------------x

12 Civ. 5966 (CM)

(Redacted)

DATE FILED: 4/16/14

## DECISION AND ORDER (1) DENYING THE MORGAN STANLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE GROUND OF COLLATERAL ESTOPPEL; (2) GRANTING IN PART THE MOTION OF VELERON TO UNSEAL THE RECORD; AND (3) CHANGING THE CAPTION IN THIS CASE

McMahon, J.:

There are two motions presently before the Court.

First, the defendants whose cases have not been dismissed on the ground of *forum non conveniens* (all of them affiliated of Morgan Stanley & Co., and hereinafter referred to collectively as "Morgan Stanley") have moved for summary judgment dismissing the claim against them on the ground of collateral estoppel. Because the allegation of securities fraud in violation of U.S. law that is pleaded against Morgan Stanley has not been resolved anywhere, by any competent tribunal—let alone by a London arbitral tribunal, in a private arbitration to which neither Veleron nor Morgan Stanley was party, and in which discovery from Morgan Stanley and other third parties was severely circumscribed—that motion is denied.

Meanwhile, plaintiff—which originally insisted that this case be filed under seal—seeks an order unsealing specific portions of the record in this case. That motion is granted.

This matter has heretofore been litigated entirely under seal due to the pendency of a related arbitration in the London Court of International Arbitration (the "LCIA") between Veleron's corporate corporation, OJSC Russian Machines ("RM") and BNP Paribas SA ("BNP"), which was formerly a defendant in this lawsuit. That arbitration recently concluded with the issuance of an award (the "Second Partial Award" or "SPA"), which is itself supposed to be held in confidence, but which was produced during discovery pursuant to a subpoena issued to BNP and disclosed to this Court because it serves as the basis for both Morgan Stanley's motion and its opposition to Veleron's. As far as this Court knows, the SPA has not been confirmed or reduced to a judgment by any court of law – which would, at least in this country, expose it to the public.

1

The action pending before this Court charges a major American investment bank with insider trading and market manipulation in violation of United States law. Morgan Stanley was not a party to any private arbitration agreement that allowed it to answer these serious charges in a private forum; and as recent events have made clear, we do not operate secret commercial courts in the United States of America. In fact, it violates our Constitution to do so. *See, e.g., Delaware Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 521 (3d Cir. 2013), *cert. denied*, ___ U.S. ___, No. 13-869, 2014 WL 271920 (Mar. 24, 2014). No principle of international comity requires this Court to conduct a proceeding to enforce the securities laws of the United States in secret simply because a related proceeding was cloaked in confidentiality; and no rule of confidentiality to which either Veleron or Morgan Stanley was party will be violated if this Court admits the public to the courtroom in which this lawsuit will be litigated. Having read the SPA in its entirety, I can safely predict that the London Tribunal will have no quarrel with my conclusion.

The LCIA held RM in violation of its confidentiality rules for providing documents turned over during the arbitration (eventually, the entire arbitration file) to Veleron. But if Veleron (which was not a party to the London Arbitration) is engaging in misconduct on behalf of its parent by using confidential documents to conduct this litigation, the Arbitrator can impose what remedies lie within his power—indeed, he has done so—and this Court, on an appropriate application, can decide whether to enforce those remedies here. Imposing blanket confidentiality on this lawsuit, however, is neither within this Court's power nor is it the right answer. Litigation in an American court is not governed by the principle that "what happens in Vegas stays in Vegas"—or in this case, in London. Private agreements cannot be used to circumvent United States courts' policy in favor of open litigation, and private parties cannot unilaterally keep information that is relevant to a lawsuit properly before a United States court out of public view, even if that same information is material to a private dispute resolution that is subject to confidentiality. Put otherwise, a private agreement to arbitrate a dispute does not cloak documents and other evidence relevant to that dispute with a "shield of invisibility," or immunize them either from public disclosure in connection with other, related proceedings or from publication in connection with those other proceedings.

As far as this Court is concerned, Veleron's motion does not go far enough. At this point, the entire file in this action should be unsealed, unless some party can explain why a particular page or document in the record qualifies as "confidential" *as that term is defined in the confidentiality stipulation entered during this litigation.* This Court, not the LCIA, will decide what stays secret and what is disclosed to the public in a securities fraud litigation in New York.

## BACKGROUND

### I. The Claim Against Morgan Stanley in this Action.

Veleron is a wholly-owned subsidiary of RM, which in turn is owned by a Russian oligarch named Oleg Deripaska. Veleron was used by RM to acquire shares of stock in a Canadian company, Magna International. The shares were acquired on margin, using funds borrowed from BNP (the Lender), which later syndicated some of its risk to four other institutions, including The Royal Bank of Scotland, N.C., Credit Suisse International, Negen/Natixis Capital Limited, and Morgan Stanley (the "Participants"). The loan was

2

collateralized with the shares of Magna stock that had been purchased with the proceeds. The Participants had no right to vote or otherwise to dictate the declaration of a default or any decision regarding forbearance.

On January 31, 2008, Morgan Stanley (one of the Participants) was retained by BNP to serve as the Disposal Agent in the event that Veleron defaulted on the loan (a "Realization Event') and the collateral had to be sold. The Agency Disposal Agreement between BNP and Morgan Stanley, unlike all the other agreements that are pertinent to the events in suit, is governed by New York law and designates this court as the forum for all disputes arising thereunder.

On September 29, 2008, in the midst of the world financial meltdown, Magna's stock price (like the price of everything else) declined significantly, which led to a $92 million margin call in respect of the pledged securities. BNP declined an offer to forebear on its margin call for two weeks and, on September 30, issued a second, accelerated margin call, demanding payment of $113.8 million by 1 PM EST on October 1.

To stave off default and the sale of the shares in that disastrous market, RM forfeited whatever advantage it had obtained by using a shell corporation to effect the purchase of Magna and guaranteed the loans, signing an agreement to do so on October 2, 2008—which, the reader will discern, was after the margin calls had come due and gone unpaid. RM hoped the guarantee would buy Veleron two weeks to find new funding. There is some indication that BNP was willing to waive the margin call, but only as long as all the Participants were on board with that approach. (SPA ¶ 64; FAC ¶ 92-95). Proposals for additional funding were circulated and discussed throughout the October 1-2 period in the hope of obtaining the consent of all Participants to an extension.

However, the guarantee contained no express promise that BNP would waive the margin call and forbear in realizing on the collateral for any set period of time, and the aforementioned discussions did not bear fruit. Indeed, by the time the guarantee was signed, the Participants and BNP had already had discussions concerning the disposition of the shares pledged as collateral. Morgan Stanley was the first Participant to insist that the plug be pulled; it sent a termination notice to BNP sometime before 6:21 BST on October 2, 2008 (SNP ¶ 73; FAC ¶ 124-25), and as one party put it, "If one party drops out it's the whole pack of cards comes down, the house of cards comes down. So it that's the situation so be it, we're in a liquidation scenario." (SPA ¶ 73; FAC ¶ 125).

At 8 PM on October 2, BNP sent an acceleration notice to Veleron, giving the company five hours to make payment or the collateral would be sold. The next day, Morgan Stanley, which as Disposal Agent had complete discretion over when and how to realize on the collateral, launched an Accelerated Book Building (ABB)—a form of private offering in equity capital markets where larger blocks of shares is offered to institutions and other qualified investors over a short period of time. According to the First Amended Complaint in this action (the "FAC"), secrecy is essential to an ABB's success is secrecy, since the fact and timing of an ABB would itself be a market-moving event. (FAC ¶ 131).

3

The essence of Veleron's claim against Morgan Stanley—which is all that remains of the lawsuit originally filed in this Court[1]—is that Morgan Stanley violated the U.S. securities laws by (1) shorting Magna stock in the days and hours leading up to the ABB, and (2) informing certain select customers of the identity of the security that was being sold and the reasons for the sale before making any public announcement of the ABB. Veleron alleges that this both enriched Morgan Stanley and depressed the price of Magna's stock going into the ABB, which either resulted in or increased the amount of any deficiency remaining after the forced sale.

## II. The London Arbitration

On August 6, 2010, BNP commenced an arbitration in the LCIA against RM to collect on the guarantee that RM had executed only hours before the acceleration of the loan, the ultimate default and the forced sale of the Magna securities via the ABB.

The LCIA rules are all but guaranteed to cloak any proceeding conducted there in the utmost secrecy. Article 30.1 of those rule states as follows:

> Unless the parties expressly agree in writing to the contrary, the parties undertake as a general principle to keep confidential all awards in their arbitration, together with all materials in the proceedings created for the purpose of the arbitration and all other documents produced by another party in the proceeding not otherwise in the public domain – save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right or to enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority.

Morgan Stanley argues, and Veleron does not dispute, that the material covered as "confidential" under Article 30.1 includes, not only decisions of the arbitral tribunal, but also documents and evidence produced in the proceedings. The confidentiality of the arbitration is protected by English law, which implies a duty of confidentiality in all arbitral proceedings; and the failure to maintain confidentiality where required may result in the imposition of severe sanctions or the institution of legal proceedings against the discloser by other parties to the arbitration. *Caringal v. Karteria Shipping Ltd.*, 2001 WL 874705 (E.D. La. Jan. 24, 2001), *Hassneh Ins. Co. of Israel & Others v. Stuart J. Mew*, (1993) 2 Lloyd's Rep. 243.

My reading of the rules, however, discloses that the confidentiality of arbitration proceedings does not entirely immunize evidence from disclosure outside of those proceedings— for example, if a party is under legal duty to disclose materials and documents, or if disclosure is "reasonably necessary" so that a party can "protect or pursue a legal right" in some other forum.

---

[1] On May 16, 2013, this Court granted a motion to dismiss the claims against BNP and the Participants other than Morgan Stanley on *forum non conveniens* grounds, so they could be litigated in the courts of England. *See* Docket # 117. In the same decision, I dismissed a tortious interference claim against Morgan Stanley as time barred under applicable (i.e., New York) law.

4

From reading the SPA, I have also learned that English law accepts disclosure of otherwise confidential arbitration material where "interests of justice" so allow. (SPA ¶ 379).

—indeed, it has been admitted by RM—that RM, which was a party to the arbitration, began as early as December 2010 to disclose confidential arbitration documents to Veleron, which was not a party to the arbitration, although it is both a wholly-owned RM subsidiary and the actual Borrower under the Loan that was the subject of the arbitration. On July 10, 2012—one month before this lawsuit was filed—RM secretly released the entire arbitration file to Veleron, without obtaining the consent of either BNP or the Tribunal. The complaint in this action was predicated in large measure on information contained in the arbitration file. Veleron obtained an order from the Part One judge, The Hon. Katherine B. Forrest, allowing it to file the pleading under seal. (Docket #1).

The Tribunal directed RM (which is not a party to this lawsuit) through Veleron (which is a party to this lawsuit) and BNP (then a party defendant in this lawsuit) to seek an order from this court sealing all proceedings here. Upon the parties' application, this Court extended Judge Forrest's order—which applied only to the original complaint and its exhibits and only until such time as this Court could examine the matter—on September 25, 2012. I did so expressly out of deference to the order of a sister tribunal, the LCIA, while expressly reserving this Court's right to dissolve the seal once the arbitration was concluded. (Docket #35). It is thus incorrect to refer to the sealing order as a "permanent" seal, as has been suggested in some of the papers in opposition to the motion.

When the First Amended Complaint was filed on December 7, 2012, this Court allowed it to be sealed because Veleron's counsel represented that the FAC would quote from, discuss and cite confidential information from the London Arbitration, then still an ongoing proceeding. (Docket #86). The Court also sealed the papers on the motions to dismiss and the decision referred to in footnote 1 above for the same reason (Docket #96).

On August 30, 2013, the Tribunal entered the SPA (Polkes Decl. Ex. A),


5



As noted above, RM defended against the allegation of a rules violation by invoking the "reasonably necessary to protect or pursue a legal right" and "interests of justice" exceptions to the LCIA's non-disclosure rule; these issues were litigated furiously, with rounds of briefing and argument, and the Arbitrator made extensive findings of fact in rejecting RM's contention. To the extent that RM submitted that it was protecting its own legal rights by seeking compensation for Morgan Stanley's purported securities fraud (which ended up costing RM money on the guarantee), the Tribunal countered that RM had not sued Morgan Stanley.



—thereby resulting in "disclosure of Arbitration Documents *[that] was not scrutinized in any manner.*" (SPA ¶ 394)(Emphasis added). Under English law, "convenience" is not a substituted for "reasonable necessity," and the Arbitrator rejected any contention that time constraints prevented RM from applying to the Tribunal or a court of law for permission to disclose such documents as were in fact pertinent to the issues raised in this court. (SPA ¶ 391)

"Confidential information" for purposes of this injunction was defined exceedingly broadly; it was not limited to the sort of information that might be kept confidential in an American court (such as trade secrets), but included any information, whether business sensitive or not, that had been generated within the arbitration or provided by BNP to RM as part of the arbitration. As the events that underlie the arbitration also underlie this lawsuit—though the parties and the claims are different—the Tribunal's order cloaks with confidentiality information

at least some information that is relevant to these proceedings. The Tribunal was, however, under no illusion that the its order would define the scope of confidentiality here, specifically acknowledging this Court's statement that, "Once the London arbitration is concluded, that matter [of confidentiality] will be revisited by this court, which will not feel bound by any arbitrator's order." (SPA ¶ 404; Decision and Order Denying Motion to Stay All Proceedings Pending Arbitration, Oct. 12, 2012, ECF No. 56, at 2)

Last fall, Morgan Stanley obtained a copy of the SPA by subpoenaing it from BNP in this litigation; the subpoena imposed on BNP a legal duty to produce the document, which meant that it could be produced without any violation of LCIA confidentiality. After reviewing it, Morgan Stanley has moved for summary judgment on collateral estoppel grounds.

Obviously, Morgan Stanley does not mean that its alleged violation of U.S. securities laws was litigated in the arbitration—Morgan Stanley was not even a party to that arbitration, and no claims arising under U.S. law were asserted in that proceeding. But it argues that elements of the award necessarily preclude Veleron, as the alter ego of RM, from establishing either loss causation or damages—both of which are elements of a claim for securities fraud under Section 10(b)(5) and Rule 10b-5 thereunder.

Meanwhile, Veleron has moved for permission to unseal portions of the record so as to make public the entire texts of the FAC, the various legal memoranda filed in support of and in opposition to the defendants' motions to dismiss, and the May 16, 2013 Decision and Order. Veleron also asks that the briefs in support of and in opposition to Morgan Stanley's motion for summary judgment be unsealed, except insofar as is necessary to preserve the confidentiality of the SPA—although, as Morgan Stanley's motion is predicated entirely on the SPA, the requested unsealing order could effectively be limited to the caption and the signature line of those briefs.

## DISCUSSION

### I. Veleron's Motion to Unseal is Granted.

In the United States, there is both a constitutional (First Amendment) and a common law right of public access to judicial documents—defined as documents that are "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) and 71 F.3d 1044, 1048 (2d Cir. 1995). Accordingly, court records are presumptively open to the public and should not be sealed unless "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Pro. Res. Group, LLC v. Martin Professional A/S*, 907 F. Supp. 2d 401, 417 (S.D.N.Y. 2012). In so doing, a court is expected to engage in a two-step process: first determining the strength of the presumption of public access to the document in question, and second weighing any countervailing factors against the presumption of access. *Scheider v. Wallace*, 1996 WL 633226, at *1 (S.D.N.Y. Oct. 31, 1996) (citing *Amodeo*, 71 F.3d at 1049-51). Sealing an entire case file, or any significant part of it, is particularly disfavored, because it "conceal[s] the very existence of lawsuits from the public." *Standard Chartered Bank International (Am.) Ltd. v. Calvo,* 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010). Indeed, that has been described as a measure of last resort. *In re Platinum & Palladium Commodities Litigation*, 828 F. Supp. 2d 602, 604 (S.D.N.Y. 2011).

The FAC, the Motions to Dismiss and their supporting and opposing briefs, and the May 13, 2013 Decision and Order were all filed under seal out of deference to the ongoing London Arbitration,[2] because (and only because) the arbitrator specifically asked for confidentiality, and one party to that arbitration (BNP) was also a party to this lawsuit. Of course, the confidentiality imposed by LCIA rules did not stop Veleron from predicating its complaint and its opposition to the Motions to Dismiss on material leaked to it by its parent, RM—which was bound by the LCIA rules no less than BNP. Indeed, it is somewhat ironic that Veleron, which initiated all the sealing in this matter, is now seeking to undo what it did—arguing against sealing even though it strenuously advocated for sealing the documents that brought this lawsuit into being.

But all that is past. The London Arbitration appears, for all practical purposes, to be over. The issues concerning RM's liability to BP on the loan guaranty and BP's liability to RM under its contracts with Veleron for the events of September and October 2008 have been adjudicated, applying the law relevant to those parties: the laws of Ontario and England. All that has been done in complete privacy (some of that privacy the gift of this Court). The terms of at least those aspects of the award and the reasons therefor will continue to remain secret—references in this opinion to portions of the SPA that discuss those issues will remain under seal unless (as I believe will prove highly unlikely) such references are necessary to decide the issues in this case.

Morgan Stanley opposes any unsealing, interpreting the rules of the LCIA as contemplating eternal privacy for all matters therein arbitrated—and, apparently, for all the evidence that is relevant to such matters, albeit with a couple of limited carve-outs. This interpretation is part and parcel of a well-documented effort by private business parties to get around liberal American discovery rules by finding ways to shroud, not just dispute resolution proceedings, but evidence about disputed matters, with secrecy. *See, e.g.*, Laurie Kratky Doré, *Public Courts Versus Private Justice: It's Time to Let Some Sun Shine in on Alternative Dispute Resolution*, 81 CHI.-KENT L. REV. 463 (2006). Morgan Stanley's arguments fail to persuade.

Because of the strong First Amendment and common law interest in public access to judicial proceedings, "confidential information" in American litigation has historically been limited to information that, if disclosed, could cause real and imminent damage to the parties' interests—the prime examples being trade secrets and premature disclosure of market-moving events. But documents that relate to but do not disclose such confidential matters have never been similarly endowed with confidentiality. An example: the long-secret formula for Coca-Cola would be (and undoubtedly has been) deemed "confidential" as a trade secret and shielded from disclosure in litigation. But documents predicting the success or failure of an initiative to alter the formula would not be "confidential" in a lawsuit alleging that a knowledgeable Coca-Cola executive traded in Coke stock while in possession of inside information about such a proposed change. Those documents and testimony about them, as well as any pleadings, briefs and opinions citing to them, would all be on the record in publicly-available documents.

For obvious reasons, corporations confronted with the specter of litigation the American way do not want to be shielded from litigation-attendant publicity. As I concluded when deciding the *forum non conveniens* motion, the terms of the loan between Veleron and BNP appear to

---

[2] They were not sealed out of deference to the Part One judge, whose order was explicitly intended to apply only until the assigned judge could consider and rule on the matter.

8

have been drafted with an eye to keeping any dispute about the loan out of an American court. *See* Decision and Order, May 16, 2013, ECF No. 117, at 1, 55-56. In recent years, some sophisticated parties have preferred arbitrating commercial disputes to litigating them, not only for whatever benefits they perceive in alternative dispute resolution, but also so they can argue against producing "confidential arbitration materials" in other contexts—or at least get those materials, and references to them, sealed from public and regulatory inspection. Most recently, we witnessed an effort by one of the country's premier commercial courts, the Delaware Court of Chancery, to create a confidential commercial court, in which judges of the Court of Chancery would effectively serve as arbitrators, with proceedings conducted outside the public view. This special tribunal was instituted for the express purpose of "competing" with private dispute resolution services, there being a fear among courts that commercial interests were starting to take their business elsewhere. *See, e.g.*, Steven M. Davidoff, *The Life and Death of Delaware's Arbitration Experiment*, N.Y. TIMES DEALBOOK (Aug. 31, 2012 11:58 AM), http://dealbook.nytimes.com/2012/08/31/the-life-and-death-of-delawares-arbitration-experiment. The United States District Court for the District of Delaware had little difficulty holding that this interesting arrangement was unconstitutional, *Delaware Coal. for Open Gov't v. Strine*, 894 F. Supp. 2d 493, 504 (D. Del. 2012), and the Third Circuit affirmed, *Delaware Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 521 (3d Cir. 2013). Just last month, the United States Supreme Court denied a petition for a writ of certiorari. *Strine v. Delaware Coal. for Open Gov't, Inc.*, ___U.S.___, No. 13-869, 2014 WL 271920 (Mar. 24, 2014). I doubt we will see anything similar tried soon.

No American court of which I am aware would ever accept that a party to an arbitration was shielded by rules like those of the LCIA from producing documents or evidence in an American lawsuit pursuant to discovery demand or subpoena. BNP's production of the SPA pursuant to a discovery subpoena duly served in accordance with the Federal Rules of Civil Procedure stands as Exhibit A for that proposition; BNP was a party to the LCIA Arbitration and is bound by the rules of that Tribunal, yet it could be and was compelled to produce to Morgan Stanley an award that is "confidential" under LCIA rules. Still less should any American court agree that a non-party to such an arbitration ought to reap any benefit from rules of confidentiality that apply only to the parties. Thus, no American court should accept the fallback position that Morgan Stanley urges: that all materials produced or used in connection with the London Arbitration between BNP and RM must remain out of the public view because they are "confidential" under the rules of the LCIA. Private parties are perfectly free to decide that they will resolve disputes among themselves in private fora rather than in courts of law—and that, in connection with such dispute resolution and as between themselves, they will keep confidential everything that is said or done in connection with such dispute resolution. But they are not free to immunize materials that are relevant to some other dispute from disclosure in connection with a wholly separate dispute resolution proceeding—particularly where, as here, that proceeding is conducted in a court of law in a country dedicated to open proceedings.

Interestingly, as I read the SPA, the arbitrator thinks no differently. He understands and respects that this Court has procedures for discovering documents and never once suggests that any materials produced in the context of the arbitration cannot be discovered here if proper procedures are followed. His ire was justifiably triggered by the refusal of a party to the proceeding before him from seeking a ruling before disclosing to a third party material that, in

9

the context of the arbitration, qualified as confidential.[3] He made no ruling that was addressed to this court or intended to bind this court.

I thus reject any suggestion that documents relevant to an action before this Court either (1) are not subject to discovery in this court because they are "confidential" within the meaning of the LCIA rules, or (2) must be kept under seal (along with references to them in documents such as opinions of this Court and briefs to the Court) simply because they were also produced in connection with the London arbitration. Any and all documents that fall within the broad definition of "relevance" in the Federal Rules of Civil Procedure are subject to discovery here and are presumptively not confidential. To the extent that a party contends that some document is confidential, this Court will be the arbiter—unbound by any agreement to which it is not a party and by the rules of any other tribunal, public or private.

That said, different considerations apply to different categories of documents.

There can be no suggestion that evidence, documents and information obtained from non-parties to the London arbitration (notably Morgan Stanley and the other Participants in the Loan) are "confidential" simply because they relate to issues that were litigated in the LCIA. This is true even if that evidence, documents or information duplicates evidence, documents and information that were produced and/or used by the parties to the LCIA arbitration. Public disclosure of relevant materials obtained from a source collateral to the arbitration is perfectly in keeping with well-settled U.S. discovery rules that, for example, require parties to make sure that they cannot obtain materials from any other source before they can obtain an order requiring disclosure of materials otherwise subject to a privilege, *see* Fed. R. Civ. P. 26(b)(3)(A), or provide for waiver of the attorney-client privilege when materials are disclosed to a third party, *see, e.g., United States v. Int'l Bhd. of Teamsters*, 961 F. Supp. 665, 673 (S.D.N.Y. 1997). Furthermore, it has been represented to this Court that Morgan Stanley and other third party witnesses did not provide discovery (or provided only the most minimal discovery) in connection with the London Arbitration. As a result, nothing they have produced in this court from their files falls within any rational reading of the arbitrator's broad definition of "confidentiality."

BNP has been required to produce documents in connection with this lawsuit, even though, as a party to the London arbitration, BNP is bound by the LCIA confidentiality rules. Those rules, however, do not preclude a party from producing documents in order to comply with a legal duty; BNP responded to a subpoena that imposed such a duty upon it. Having been produced in response to a subpoena issued by this Court, those documents are subject to confidentiality in this proceeding only insofar as this Court deems them to be confidential. The fact that the same documents were produced by BNP in connection with the arbitration is one factor that this court will consider in making such a ruling; but it is not the only relevant factor and it will not be dispositive.

The SPA—or at least those portions of it that discuss issues other than the issue of confidentiality—will continue under seal. As the LCIA arbitrator predicted, the issues here and

---

[3] Indeed, a fair reading of the SPA suggests that, had RM sought the Tribunal's permission to disclose a limited subset of redacted documents in order to commence proceedings against Morgan Stanley in this court, it might well have prevailed.

10

there are sufficiently different so that much in the SPA is of only marginal interest—and no real relevance—to the resolution of the matter before me. Nothing in the SPA is dispositive of any issue being litigated here (*see infra*), and no public policy of the United States will be violated by respecting the Tribunal's rule that an award is a confidential document as between and relating only to the two parties that litigated it. I do not feel the same way about those portions of the SPA that discuss confidentiality, which is a procedural rather than a substantive matter and which does bear relation to an issue that is very much before this court; however, the parties will have an opportunity to convince me otherwise.

Finally, there are the materials that were wrongfully disclosed to Veleron by its parent, RM. If there is one issue that is collateral estoppel in this case, it is the wrongfulness of RM's unilateral disclosure of arbitration documents to its subsidiary, a non-party to the arbitration and one not "included in the 'circle of confidentiality.'"

Sanctions are always available to redress discovery misconduct. However, it is not ordinarily the function of this Court to impose sanctions for violations committed before another tribunal in a proceeding between entirely different parties. If Morgan Stanley, or even BNP (as intervenor), were to seek to enforce the Tribunal's injunction against the further use of the purloined documents in connection with this lawsuit, numerous complicated issues would be raised; if it turned out that material subject to that injunction (i.e., material that was wrongfully disclosed to Veleron by RM) was necessary to the litigation of the securities fraud claim against Morgan Stanley *and could not be obtained from any source other than the parties to that arbitration* (that is, BNP and RM), then this Court would have to balance Veleron's interest in vindicating its rights against a non-party to the London arbitration against the interest of the LCIA in adherence to its rules. I would also have to consider whether the United States' interest in enforcing its laws against securities fraud—an interest that is especially strong when allegations of this sort are lodged against one of this country's major investment banks— counterbalances the comity that this court would otherwise be inclined to extend to an order of the London Court of International Arbitration. Fortunately, no one has made such an application, and one can only hope that it will, as both the Tribunal and I predict, prove unnecessary.

## II. Morgan Stanley's Motion for Summary Judgment on Collateral Estoppel is Denied.

In order to establish that an issue was determined in a former adjudication, a party asserting collateral estoppel must establish four things: (1) the issues in the prior proceeding and the current proceeding are identical; (2) the issue raised in the current action was in fact actually decided in the prior proceeding; (3) there was full and fair opportunity to litigate the issue in the prior proceeding; and (4) the issue previously litigated and decided was necessary to support a valid and final judgment on the merits. *In re PCH Assocs.*, 949 F. 2d 585, 593 (2d Cir. 1991). Morgan Stanley fails to establish any of the four prerequisites for collateral estoppel, let alone all four.

### A. The Issues In This Case Are Not Identical To Those Decided By The LCIA.

First, in order to invoke collateral estoppel, a party must show that the issues in the two proceedings are truly identical. *Whalen v. Ansell Perry, Inc.*, 2004 WL 840286, at *4 (S.D.N.Y.

11

April 16, 2004). Even where issues appear to be factually identical, they are not identical if they were determined in a prior proceeding pursuant to different legal standards that would apply in the second proceeding. *Jim Beam Brands Co. v. Beamish & Crawford Ltd.* 937 F. 2d 729, 734-35 (2d Cir. 1991).

The LCIA did not have before it, and did not determine, whether Morgan Stanley was liable under the U.S. securities laws for insider trading—that is, whether Morgan Stanley (1) possessed material, non-public information (2) which it had a duty to keep confidential, and (3) on which it acted, either by disclosing the information to unauthorized third parties or by trading on its own account, in breach of that duty. *See SEC v. Lyon*, 605 F. Supp. 2d 531, 541 (S.D.N.Y. 2009). Rather, the LCIA was charged with deciding whether RM was liable to BNP on its guarantee, or whether BNP's conduct either breached its contracts with Veleron (to which Morgan Stanley was not a party) or was commercially unreasonable under Ontario law.

Similarly, Veleron has asserted a market manipulation theory of recovery under the federal securities laws. To prevail on such a claim, a plaintiff must establish (1) manipulative acts, (2) in connection with the purchase or sale of any security, (3) furthered by the defendant's use of the mails or any facility of a national securities exchange, (4) committed with scienter, (5) resulting in damage, (6) that arises from the plaintiff's reliance on the assumption of an efficient market free of manipulation. *ATSI Communications, Inc., v. Shaar Fund, Ltd.* 493 F. 3d 87, 101 (2d Cir. 2007). None of those issues is comprehended in the claims in arbitration either.

That is not to say that these matters bear no relationship to what was in fact decided by the LCIA. However, as this Court concluded nearly a year ago, while the claims in the London arbitration arise out of the same nucleus of fact as the claims in this lawsuit, and hence can fairly be described as "related" to the claims in this lawsuit, they are not the same as the claims in this lawsuit, and they do not raise the same issues as are raised in this lawsuit.

### B. The Issues Raised In This Action Were Either Not Actually Litigated Before The LCIA or They Were Not "Fully and Fairly" Litigated in that Tribunal.

Whether or not the issues as set forth in the Demand for Arbitration are identical to the issues raised in the FAC as against Morgan Stanley, collateral estoppel might be appropriate if issues raised in this action (1) were actually litigated in London, (2) were necessary to the judgment there, and (3) were litigated in a "full and fair" manner as that term is defined by U.S. courts. In fact, the issues raised by this case were not actually litigated in London, because they were not litigated at all or because they did not need to be resolved in order for the arbitrator to make his award. Furthermore, to the extent the arbitrator made findings about the propriety of Morgan Stanley's conduct, he did so on what this court finds to be an incomplete record. All of this precludes the application of collateral estoppel.

Morgan Stanley does not argue that the London Tribunal decided that it had material, non-public information in its possession on which it acted in breach of any duty to its client. Nor does it argue that the arbitrator ruled on such matters as its scienter or Veleron's reliance on an efficient market. Morgan Stanley effectively concedes as much. Instead, it bases its motion on what it insists is a fair implication of the award that was made.

12

████ Morgan Stanley argues that Tribunal necessarily concluded that its actions had no impact on the price of Magna stock. Morgan Stanley also insists that this implied "conclusion" by the arbitrator means that Veleron could have suffered no damages at all, or that, if it did, it can never prove loss causation as required by U.S. law.

Morgan Stanley's argument—which depends for its force entirely on this Court's acceptance that the Arbitrator made implied findings of fact—goes far beyond anything that was actually decided in the LCIA proceeding.

████ Whether Morgan Stanley committed misconduct was not decided. The London Tribunal most certainly did not conclude that Morgan Stanley, a non-party to the arbitration, was not liable for its own conduct under the U.S. securities laws -- or that, if it did, that misconduct caused no damage, either to Veleron specifically, or even to RM. Those issues have never been decided, because they have never been litigated. They will be litigated and decided here, on a full record, in a proceeding open to the public.

The arbitrator did make a number of findings based on the (limited) evidence about Morgan Stanley's conduct that was available to him, and he drew certain inferences about the price of the stock. But his actual conclusions *with respect to BNP* were ████
████ No finding about Morgan Stanley was necessary to this award.



13

As to these purported findings of fact, I note the four things:

First, Morgan Stanley points to no language in the SPA—and I find none—in which the arbitrator posited that Morgan Stanley did no harm to RM (or to Veleron) under U.S. law. The issue before this court is whether Morgan Stanley harmed Veleron by violating U.S. law.

Second, it was not necessary for the arbitrator to rule on the propriety of Morgan Stanley's actions under U.S. law in order to conclude ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Collateral estoppel is not appropriate when findings of fact are unnecessary to the entry of a valid judgment. *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 51 (2d Cir. 2003).

Third, neither Morgan Stanley nor (more important) Veleron was a party to the LCIA Arbitration—the Tribunal specifically ruled that Veleron was *not* a party to the arbitration—and the Tribunal made no findings in the nature of "piercing the corporate veil" between RM and Veleron that would allow any issue to be deemed resolved against the plaintiff in this action. Collateral estoppel applies only where the party sought to be estopped from relitigating a finding has already litigated it and lost. *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997).

Fourth—and most important—the London arbitration did not afford Veleron (or RM, its parent corporation) a full and fair opportunity to litigate the issues that are raised in this action. As a result, even if Morgan Stanley were correct, and the arbitrator reached the conclusion that it did nothing wrong and worked no injury to RM, I would decline to foreclose further litigation on the issue.

It is well established that an opportunity to litigate is neither full nor fair, and thus collateral estoppel is precluded, where the discovery available in a prior proceeding was more limited than would be the case before this court. *Locurto v. Giuliani*, 447 F. 3d 159, 171 (2d Cir. 2006); *U.S. v. U.S. Currency In the Amount of $119,984.00*, 304 F. 3d 165, 176 (2d Cir. 2002).[4] Furthermore, where evidence is available in the second proceeding that was not discovered and made available to the first tribunal, collateral estoppel does not apply. *Khandhar v. Elfenbein*, 943 F.2d 244, 249 (2d Cir. 1991).

The scope of discovery in the LCIA arbitration was significantly narrower than is the case in this Court. RM was not permitted to subpoena documents from Morgan Stanley or to depose any Morgan Stanley witnesses. Dzhazoyan Aff. ¶ 7-8. As a result, none of the factual issues related to the securities fraud allegations was litigated in the manner in which those factual issues will be litigated in this court.

For example, no Morgan Stanley having personal knowledge of its short position in Magna—Anthony Cicia, John Neary, Kerim Tuna, Cyrille Walter or Kevin Woodruff—testified in the London arbitration. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] I am not aware of any Supreme Court or Second Circuit *en banc* authority overruling the statement made on this subject in *Locurto*.

Discovery has been taking place in this Court since I decided the motions to dismiss last May. Without going into detail here, suffice it to say that enough has been disclosed to this Court to convince me that Morgan Stanley is unlikely to prevail should it ever make a motion for summary judgment dismissing Veleron's securities fraud claim on the merits. Evidence has turned up during discovery that, if credited by a trier of fact, would tend to support a claim that traders at Morgan Stanley shorted Magna stock while in possession of material, non-public information. There is also evidence (consisting of both party admissions and expert testimony) that this trading depressed the price of Magna's stock just prior to the ABB. None of this evidence was available to the Tribunal in London, because non-party discovery was limited or prohibited. None of it was considered by that tribunal. All of it will be considered by this Court.

In short, seldom has there been a case in which it would be so manifestly inappropriate to apply the doctrine of collateral estoppel. Morgan Stanley's motion for summary judgment on that ground is denied.

## CONCLUSION

The motion to unseal the record is GRANTED and the motion for summary judgment on the ground of collateral estoppel (Docket # 131) is DENIED. The Clerk of the Court is directed to remove both motions from the Court's list of open motions.

In view of the fact that many of the defendants have been dismissed from this lawsuit, the Caption should be changed to eliminate any reference to those defendants.

Dated: April 2, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

15