UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

VELERON HOLDING, B.V.,                            :
                                                  :
                              Plaintiff,          :
                                                  :
                                                  :
                - against -                       :
                                                  :
BNP PARIBAS SA, et al.,                           :
                                                  :
                              Defendants.         :
_____

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8-22-14
```

**OPINION
AND ORDER**

**12-CV-5966 (CM) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

Plaintiff Veleron Holding, B.V. ("Veleron") brings this action against Defendants

Morgan Stanley, Morgan Stanley Capital Services, Inc., Morgan Stanley & Co., Incorporated,

Morgan Stanley & Co. (together "Morgan Stanley") for securities fraud.[1]   Before the Court is

Morgan Stanley's request for an order to compel Veleron to produce documents concerning

communications with foreign attorneys that it has withheld on the basis of attorney-client

privilege and work product immunity.  For the following reasons, Morgan Stanley's request is

**GRANTED.**

## I. BACKGROUND

Morgan Stanley claims that Veleron has improperly withheld documents concerning

communications with individuals who appear to be Veleron's "in-house" or "outside" counsel

based in foreign jurisdictions, specifically Russia and the Netherlands.  (Def. Letter to the Court,

---

[1]On April 16, 2014, the Court dismissed a number of other Defendants from the case, including Defendants
BNP Paribas S.A., Credit Suisse International, Nexgen/Natixis Capital Limited, the Royal Bank of Scotland, N.V.,
ABN Amro Bank N.V., Fortis Bank (Nederland) N.V., and Magna International, Inc.  (Docket No. 162.)  The Court
also dismissed Veleron's breach of contract and tortious interference with contract claims against Morgan Stanley.
(*Id.*)

June 26, 2014, at 1-2, Ex. A.)  These documents were listed in Veleron's privilege log, which

was produced on February 11, 2014.  (*Id.* at 1; Pl. Letter to the Court, July 3, 2014, at 1.)

Morgan Stanley claims that Veleron did not state the source of law on which its privilege

assertions were based or provide information on whether the attorneys were licensed to practice,

and, if so, in which jurisdictions. (*Id.* at 1-2.)  Morgan Stanley wrote to Veleron on May 16,

2014, challenging Veleron's assertions of privilege in the documents at issue.  (Def. Letter to the

Court, June 26, 2014, at Ex. C.)  Referring to the documents, Morgan Stanley asserted that

"Russian law does not recognize attorney-client privilege or work product immunity for legal

advice or work product provided by Russian-qualified in-house attorneys or unlicensed outside

counsel," and "the Netherlands does not recognize any attorney-client privilege or work product

immunity for legal advice or work product provided by unlicensed attorneys." (*Id.*)  Morgan

Stanley additionally asserted that United States law has only limited protections for legal advice

and work product provided by attorneys who are not admitted in any United States jurisdiction.

(*Id.*)  Morgan Stanley requested that Veleron provide information on 1) the sources of law on

which its claim of privilege relied; and 2) information on whether the attorneys at issue were

licensed, and if so, in which jurisdictions.

On May 22, 2014, Veleron objected to Morgan Stanley's request, arguing that such

information was not required under either Federal Rule of Civil Procedure 26(b)(5) or Local

Civil Rule 26.2, and Morgan Stanley's demand was improper because it was not made on a

specific "document-by-document" basis.  (*Id.* at Ex. D.)  On June 26, Morgan Stanley requested

an order to compel Veleron to produce the documents at issue.  (Docket No. 200.)  Veleron

objected on June 30, asserting that Morgan Stanley had failed to meet and confer with Veleron

before requesting the order.  (Docket No. 201.)  In response, Morgan Stanley asserted that it had

2

met and conferred with Veleron on April 25, 2014, and through its May 16, 2014 letter

requesting additional information. (Docket No. 202.)  On July 3, 2014, Veleron objected

substantively to Morgan Stanley's request. (Docket No. 203.)

## II. DISCUSSION

"[T]he burden is on a party claiming the protection of a privilege to establish those facts

that are the essential elements of a privileged relationship." *Von Bulow by Auersperg v. Von*

*Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (internal quotations omitted).  Once an assertion of

privilege is challenged, the withholding party must "submit evidence . . . establishing only the

challenged elements of the applicable privilege or protection, with the ultimate burden of proof

resting with the party asserting the privilege or protection." *A.I.A. Holdings, S.A. v. Lehman*

*Bros., Inc.*, 97-CV-4978 (LMM) (HBP), 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002),

*supplemented sub nom. A.I.A. Holdings v. Lehman Bros, Inc.*, 97-CV-4978 (LMM) (HBP), 2002

WL 31556382 (S.D.N.Y. Nov. 15, 2002).

Morgan Stanley challenged Veleron's assertions of privilege in the documents at issue on

May 16, 2014.  (Def. Letter to the Court, June 26, 2014, at Ex. C.)  Once Morgan Stanley

challenged Veleron's claims of privilege, by asserting that Russian and Dutch law did not

recognize attorney-client privilege or work product immunity for the attorney communications at

issue, Veleron was required to submit evidence establishing the challenged elements of the

privilege. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31385824, at *6.  Veleron

failed to do so, and has thus failed to sustain the claim of privilege.

### A.    *Morgan Stanley has satisfied its obligations.*

Veleron argues that the Court must deny Morgan Stanley's request for an order to compel

because Morgan Stanley failed to meet and confer with Veleron regarding the disputed

3

documents. Morgan Stanley claims that it met and conferred with Veleron about the dispute on

April 25, 2014, and that it referred to this meeting in its May 16, 2014 letter. (Def. Letter to the

Court, July 1, 2014.) Morgan Stanley's May 16, 2014 letter stated: "As we have discussed

during previous meet and confer conferences, the Privilege Log and its accompanying legend

suggest that Veleron has withheld from production on the purported bases of attorney-client

privilege and work product immunity a large number of communications that appear to have

originated from foreign-qualified attorneys . . . ." (Def. Letter the Court, June 26, 2014, Ex. C.)

Veleron claims that although the Parties met and conferred on April 25, 2014 about other

discovery issues, the Parties never substantively discussed this particular issue. (Pl. Letter to the

Court, July 3, 2014, at n.2.)

Under Rule 37, a motion to compel must include "a certification that the movant has in

good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Courts have

excused the meet-and-confer requirement "where temporal exigencies required speedy action

and where efforts at informal compromise would have been clearly futile." *Prescient Partners,*

*L.P. v. Fieldcrest Cannon, Inc.*, 96-CV-7590 (DAB)(JCF), 1998 WL 67672, at *3 (S.D.N.Y.

Feb. 18, 1998). Ordinarily, however a motion to compel must be denied where the parties have

failed to meet and confer. *Id.*

The Court finds Morgan Stanley's assertion that the parties met and conferred to be

credible. Based on the July 15, 2014 Telephone Conference, it is clear that any further

discussions by the Parties would not have resolved the issue. The principle separating the

Parties was not amenable to compromise: either the privilege applied or it did not. Veleron gave

no indication that it would yield on its claim of privilege in the absence of a court order.

4

**B.**    *Morgan Stanley was not required to challenge the disputed documents on a document-by-document basis.*

Veleron argues that Morgan Stanley was required to challenge the assertion of privilege by identifying each document that did not meet the elements of the privilege. This is incorrect, if a class of documents share a common characteristic, they may be challenged on the basis of that characteristic. This could include, for example, documents challenged because there is an assertion that the privilege was not applicable during a certain time period, or with respect to a certain individual, or because of any clearly defined criteria. Here, Morgan Stanley identified the categories of documents it was challenging in its May 16, 2014 letter as "communications that appear to have originated from foreign-qualified attorneys, including Russian in-house counsel and purported 'outside' counsel from Russia and the Netherlands." (Def. Letter to the Court, June 26, 2014, at Ex. C.) Morgan Stanley also attached to its letter a list of the individual attorneys for whom it sought licensure information. By identifying the documents both by individual attorney and generally by attorney status as foreign-qualified, in-house and outside counsel, Morgan Stanley provided sufficient information to notify Veleron which documents it was challenging. Requiring Morgan Stanley to identify each individual document would be unnecessarily time-consuming. Furthermore, Veleron has itself categorized the information in its privilege log by individual attorney and by in-house or outside counsel status in the legend it provided to Morgan Stanley. (Pl. Letter to the Court, July 3, 2014, Ex. C.) Therefore, Veleron cannot argue that it is incapable of identifying the documents based on those identifiers.

The only case law from this District Veleron cites to defend its proposition that documents must be challenged on a document-by-document basis is *In re Delphi Corp.*, 276 F.R.D. 81, 87 (S.D.N.Y. 2011). Veleron's reliance on this case is misplaced. In *In re Delphi*

5

*Corp.*, the plaintiffs requested *in camera* review of withheld documents on the basis of their claim that the privilege log and affidavits filed by the government were "insufficient because they contain[ed] conclusory, self-serving language." The Court denied *in camera* review, finding that such a "general challenge to 'conclusory' language" to be insufficient. In this case, Morgan Stanley has not made a general challenge to the basis on which the documents at issue were withheld. Rather, by providing the specific categories of documents challenged, Morgan Stanley has provided the information necessary for Veleron to identify each document challenged.

**C.    *Veleron was required to provide information to establish the challenged elements of its claim of privilege.***

Veleron argues that requiring it to submit evidence establishing the challenged elements of the privileges claimed would contradict Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2, which specifically do not require a party to allege facts establishing an attorneys' admission to the bar at the time of an allegedly privileged communication. Veleron relies on *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31385824, at \*4 (S.D.N.Y. Oct. 21, 2002). However, the Court in *A.I.A. Holdings* held that while a party is not initially obligated to provide information establishing the elements of an applicable privilege or protection, and need only provide the information required by Rule 26(b)(5) and Local Civil Rule 26.2, once an assertion of privilege is challenged, "the withholding party then has to submit evidence . . . . establishing only the challenged elements of the applicable privilege or protection." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31385824, at \*6. Because Morgan Stanley has challenged Veleron's claims of privilege, Veleron was required to provide information establishing the challenged elements of its claims.

6

**D.      *Morgan Stanley correctly applied the "touch-base" test***

Veleron argues that even if the Court finds it was required to establish the challenged elements of its claims of privilege, Morgan Stanley's request to compel must be denied because Morgan Stanley relies on a misunderstanding of choice of law doctrine regarding assertions of attorney client privilege and work product immunity in connection with foreign-qualified attorneys.

The Second Circuit applies the "touch base" test to determine what country's law of privilege applies to foreign documents.  Under the Second Circuit's "touch base" choice of law analysis, this Court must apply the law of the country that has the "predominant or the most direct and compelling interest in whether [the] communications should remain confidential" to disputes involving foreign attorney-client communications, "unless that foreign law is contrary to the public policy of this forum." *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 486 (S.D.N.Y. 2013), *on reconsideration in part*, 11-CV-1266 (SAS), 2013 WL 6098484 (S.D.N.Y. Nov. 20, 2013) (quoting *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM)(FM), 2013 WL 3369084, at *1 (S.D.N.Y. July 8, 2013)) (internal quotation marks omitted).  The jurisdiction with the predominant interest is "either 'the place where the allegedly privileged relationship was entered into' or 'the place in which that relationship was centered at the time the communication was sent.'" *Anwar v. Fairfield Greenwich, Ltd.*, No. 09-CV-118 (VM)(FM), 2013 WL 3369084, at *1 (S.D.N.Y. July 8, 2013), *aff'd*, 982 F. Supp. 2d 260 (S.D.N.Y. 2013) (quoting *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002)).

Morgan Stanley claims that the jurisdiction with the "predominant interest" for the documents at issue is either Russia or the Netherlands.  It argues that because the documents concern communications that occurred in Russia or the Netherlands between Veleron's Russian

7

and Dutch executives with Veleron's Russian or Dutch counsel, Russia and the Netherlands are the "place[s] where the allegedly privileged relationship[s] . . . [were] entered into" and the places "where the relationship[s] . . . [were] centered at the time the communication[s] . . . [were] sent." *Anwar*, 2013 1L 3369084, at *1.

Veleron disputes this analysis, arguing that it is the "*substance* of the communications in question that is critically important to the touch-base test." (Pl. Letter to the Court, July 3, 2014, at 3) (emphasis in original). Because the "majority of the communications" at issue relate to Russian Machine's guaranty, which Veleron asserts is governed by British law, and the Magna investment and related agreements, which are governed by Canadian law, Veleron asserts that British and Canadian attorney-client privilege law apply.

For this proposition, Veleron relies on the same cases cited by Morgan Stanley, *Wultz v. Bank of China Ltd.* and *Anwar v. Fairfield Greenwich Ltd.* Specifically, Veleron focuses on the *Anwar* court's application of the touch base test. The *Anwar* court noted that "American law typically applies to communications concerning 'legal proceedings in the United States' or 'advice regarding American law,' while communications relating to . . . foreign law . . are generally governed by foreign privilege law." *Anwar*, 2013 1L 3369084, at *1. The court then reasoned that an unlicensed Dutch attorney's communications "likely 'touch base[d]' with the United States because they are related to legal issues arising out of the Citco Defendants' role in the administration of key feeder funds." *Id.* at *1. However, the court explicitly did not make a finding on this point, stating "I say 'likely' because the communications at issue were not provided to me," and ultimately determining that there was "no need to resolve [the] question" because the same result applied regardless of whether it applied Dutch or American law. *Id.*

Veleron also relies on *Wultz v. Bank of China, Ltd.*, 979 F. Supp. 2d 479 (S.D.N.Y.

2013).  However, the court in *Wultz* held that, "the applicable privilege law should be of those
'countries [that] have the predominant interest in whether those communications should remain
confidential,' which are the nations 'where the allegedly privileged relationship was entered
into.'" *Id.* at 486.  In this case, those nations are not the United Kingdom or Canada, but Russia
and the Netherlands.

Finally, Veleron relies on *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 522
(S.D.N.Y. 1992).  In *Golden Trade*, however, the court applied Norwegian, German, and Israeli
law for communications between an Italian corporation and its patent agents in Norway,
Germany, and Israel regarding patent law in those countries.  *Id.* at 522.  The court reasoned that
Norway, Germany and Israel had the "predominant interest in whether those communications
should remain confidential."  In this case, the only connection the United Kingdom and Canada
have to the communications at issue is through choice of law clauses in the relevant contracts for
Russian Machine and Magna that dictate that any dispute shall be subject to and governed by
British and Canadian law, respectively.  Comparatively, Russia and the Netherlands have a
strong interest in the uniform application of attorney client privilege law for Russian and Dutch
attorneys and for communications that occur in their respective countries. Accordingly, the touch
base analysis favors the application of Russian and Dutch attorney-privilege law to the
communications at issue.

The Parties do not dispute that Russian law does not recognize attorney-client privilege
or work product immunity for communications between or work product provided by 1) in-
house counsel; or 2) "outside" counsel who are not licensed "advocates" registered with the
Russian Ministry of Justice.  (Def. Letter to the Court, June 26, 2014, Ex. B ¶¶ 4, 7-9.)
Therefore, since Veleron has not provided any information establishing that the outside counsel

9

whose communications are at issue were advocates registered with the Russian Ministry of Justice, it has not carried its burden of showing that the communications at issue are protected under Russian law. Dutch law does not recognize attorney-client privilege for unlicensed lawyers. *Anwar*, 2013 WL 3369084, at *2. Because Veleron has not provided any information establishing that the Dutch attorneys whose communications were at issue were licensed, it has not carried its burden of showing the communications at issue are protected under Dutch law.

## III. CONCLUSION

For the foregoing reasons, Morgan Stanley's request for an order to compel Veleron to produce all relevant documents concerning communications with foreign attorneys that it has withheld on the basis of attorney-client privilege and work product immunity is **GRANTED.** Veleron shall produce all such documents by August 27, 2014.

**SO ORDERED this 22nd day of August 2014**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge

10