UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
: 
VELERON HOLDING, B.V.,                          :     Index No.: 12-cv-5966 (CM)
:
        Plaintiff,                            :
:
  - against -                                          :
:
MORGAN STANLEY; MORGAN                  :
STANLEY CAPITAL SERVICES, INC.;      :
MORGAN STANLEY & CO.,                       :
INCORPORATED; and MORGAN             :
STANLEY & CO.,                                         :
:
       Defendants.                         :
:
------------------------------------------------------------ x

**PLAINTIFF VELERON HOLDING, B.V.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO QUASH THE TRIAL SUBPOENAS OF OLEG DERIPASKA,
GULZHAN MOLDAZHANOVA, AND BAUKE VAN DER MEER**

                                           KASOWITZ, BENSON, TORRES &
                                              FRIEDMAN LLP
                                           Aaron H. Marks
                                           Ronald R. Rossi
                                           Emilie B. Cooper
                                           1633 Broadway
                                           New York, New York 10019
                                           Tel.: (212) 506-1700

                                           *Attorneys for Plaintiff Veleron Holding, B.V.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND..........................................................................................................2

A.    Morgan Stanley's Insider Trading..............................................................................2

B.    The Knowledge of the Subpoenaed Witnesses..........................................................4

      i.    Mr. Yashchenko's Knowledge ....................................................................4

      ii.    Mr. Deripaska's Knowledge........................................................................5

      iii.    Ms. Moldazhanova's Knowledge ................................................................7

      iv.    Mr. van der Meer's Knowledge...................................................................8

C.    The Upcoming Trial of Veleron's Insider Trading Claim..........................................9

ARGUMENT...................................................................................................................................9

I.    THE TRIAL SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SEEK DUPLICATIVE AND NON-RELEVANT TESTIMONY ................................................10

    A.    To the Extent Mr. Deripaska or Ms. Moldazhanova Can Offer Any Relevant Testimony, It is Duplicative of Mr. Yashchenko's Testimony ..............11

    B.    The Remainder of Mr. Deripaska's and Ms. Moldazhanova's Testimony is Not Relevant to Veleron's Insider Trading Claim..................................................12

    C.    Mr. van der Meer's Testimony is Not Relevant to Veleron's Insider Trading Claim..........................................................................................................13

II.    MR. DERIPASKA SHOULD BE PERMITTED TO TESTIFY AT TRIAL THROUGH HIS DEPOSITION TESTIMONY OR, IF LIVE TESTIMONY IS REQUIRED, VIA VIDEO CONFERENCE..............................................................................................14

CONCLUSION .............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
 262 F.R.D. 293 (S.D.N.Y. 2009).................................................................................................9

*Dagen v. CFC Grp. Holdings Ltd.*,
 No. 00 Civ. 5682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003)............................................14

*Deluca v. Bank of Tokyo-Mitsubishi UFJ*,
 No. 05 Civ. 639, 2007 WL 2589534 (S.D.N.Y. Aug. 30, 2007).............................................12

*Eugenia VI Venture Holdings, Ltd. v. Chabra*,
 No. 05 Civ. 5277, 2006 WL 1293118 (S.D.N.Y. May 10, 2006) ....................................*passim*

*Gale v. Stallone*,
 No. 91 Civ. 3467, 1996 WL 197776 (S.D.N.Y. Apr. 23, 1996)..............................................14

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
 927 F. Supp. 2d 88 (S.D.N.Y. 2013) .......................................................................................14

*Hermitage Global Partners LP v. Prevezon Holdings Ltd.*,
 No. 13 Civ. 6326, 2015 WL 728463 (S.D.N.Y. Feb. 19, 2015).......................................*passim*

*Jones v. Hirschfeld*,
 219 F.R.D. 71 (S.D.N.Y. 2003)...........................................................................................9, 13

*Kirschner v. Klemons*,
 No. 99 Civ. 4828, 2005 WL 1214330 (S.D.N.Y. May 19, 2005) ....................................*passim*

*Koch v. Pechota*,
 No. 10 Civ. 9152, 2013 WL 5996061 (S.D.N.Y. Nov. 8, 2013) .....................................*passim*

*LNC Investments, Inc. v. First Fidelity Bank*,
 No. 92 Civ. 7584, 2000 WL 1290615 (S.D.N.Y. Sept. 12, 2000)...........................................14

*Veleron Holding, B.V. v. Morgan Stanley*,
 No. 12 Civ. 5966, -- F. Supp. 3d --, 2015 WL 4503580
 (S.D.N.Y. July 22, 2015) ......................................................................................................9, 10

*Virtual Architecture, Ltd. V. Rick*,
 No. 08 Civ. 5866, 2012 WL 388507 (S.D.N.Y. Feb. 7, 2012)................................................14

**Other Authorities**

Fed. R. Civ. P. 45......................................................................................................................9

Fed. R. Evid. 401 ................................................................................................................. 7, 8

Fed. R. Evid. 402 ................................................................................................................. 7, 8

Fed. R. Evid. 403 ................................................................................................................. 7, 8

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1
     (3d ed. 2008) .................................................................................................................... 9

Plaintiff Veleron Holding, B.V. ("Veleron"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to quash the trial subpoenas of Oleg Deripaska, Gulzhan Moldazhanova, and Bauke van der Meer.

## PRELIMINARY STATEMENT

The trial in this action involves a single issue: whether Morgan Stanley, Morgan Stanley Capital Services, Inc., Morgan Stanley & Co., Incorporated, and Morgan Stanley & Co. (collectively, "Morgan Stanley") violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by short selling securities of Magna International, Inc. ("Magna) on September 30 and October 1, 2008. Given that Morgan Stanley's culpability depends entirely on its own conduct, Veleron's witnesses have little -- if any -- knowledge that is relevant to this case. Nevertheless, on September 25, 2015, Morgan Stanley served trial subpoenas on four Veleron witnesses: Mr. Oleg Deripaska, Ms. Gulzhan Moldazhanova, Mr. Bauke van der Meer, and Mr. Andrey Yashchenko (the "Subpoenaed Witnesses").

Veleron intends to produce Mr. Yashchenko -- the most knowledgeable of the Subpoenaed Witnesses concerning the background facts surrounding this case -- to testify in-person at trial. Given that Mr. Yashchenko led the transaction by which Veleron invested in Magna, was involved in the negotiation efforts surrounding the restructuring of Veleron's loan with BNP, and was the individual with the most contact with BNP, Morgan Stanley, and the other banks during the late September/early October 2008 time period, he is amply informed and able to provide any relevant testimony on behalf of Veleron.

Unlike Mr. Yashchenko, Mr. Deripaska (the founder and Chairman of the Supervisory Board of Basic Element, the ultimate parent entity to Veleron) and Ms. Moldazhanova (the CEO of Basic Element) have more limited knowledge concerning the background facts of this case,

and most of their information is second-hand, obtained through discussions with Mr. Yashchenko. Thus, to the extent that Mr. Deripaska or Ms. Moldazhanova can offer any relevant testimony at trial, it would be duplicative of Mr. Yashchenko's testimony. Moreover, other than testimony that would be duplicative of that proffered by Mr. Yashchenko, the remainder of Mr. Deripaska's and Ms. Moldazhanova's testimony is not relevant to Morgan Stanley's liability for insider trading. Indeed, nearly all of the topics covered by Morgan Stanley's counsel during the depositions of Mr. Deripaska and Ms. Moldazhanova have absolutely no bearing on whether Morgan Stanley violated federal securities laws.

Mr. van der Meer's knowledge is even more limited. Mr. van der Meer provided corporate services to Veleron, such as preparing and filing corporate income taxes, and the entirety of his knowledge concerns the corporate ownership structure of Veleron. This topic is irrelevant to Morgan Stanley's liability for insider trading.

Accordingly, because there is little interest furthered by demanding compliance with subpoenas that seek testimony that is duplicative and/or irrelevant to this case, the trial subpoenas directed at Mr. Deripaska, Ms. Moldazhanova and Mr. van der Meer should be quashed.

## FACTUAL BACKGROUND

A. **Morgan Stanley's Insider Trading**

On September 20, 2007, as part of a strategic investment by Veleron's corporate parent, Russian Machines, in Magna, BNP Paribas ("BNP") and Veleron entered into a credit agreement (the "Credit Agreement"), whereby BNP loaned Veleron approximately $1.2 billion dollars (the "Loan"). With the proceeds of the Loan (along with additional equity), Veleron purchased 20 million shares of Magna which, in turn, served as BNP's collateral for the Loan (the "Pledged Collateral"). On January 31, 2008, Morgan Stanley entered into an Agency Disposal Agreement

with BNP (the "ADA"). Pursuant to the ADA, in the event there was a default on the Loan, Morgan Stanley agreed "to act as [BNP's] agent in respect of the disposal of part or all of the [Pledged Collateral]."

At the height of the global financial crisis, on September 29, 2008, BNP made a margin call on Veleron (the "September 29 Margin Call") in connection with the Loan. After BNP issued the September 29 Margin Call to Veleron, BNP notified Alessandro Amicucci, a Morgan Stanley Managing Director. In an email sent at 8:23 a.m. (Eastern Time) on September 30, 2008, Amicucci informed other high-level Morgan Stanley employees about the September 29 Margin Call, that Veleron was facing a liquidity issue, that Veleron was not going to make the margin call, and that Veleron was requesting a restructuring of the Loan. Less than 20 minutes after Amicucci sent this email, Kevin Woodruff forwarded it to Kerim Tuna, a trader for Morgan Stanley's own account, with a flag indicating that it was of high importance. Within hours of receiving Amicucci's email, at 11:56 a.m. (Eastern Time) on September 30, 2008, Tuna began establishing significant short positions in Magna on Morgan Stanley's behalf. Additionally, because Morgan Stanley knew and understood that a liquidation of Veleron's 20 million share stake in Magna was imminently possible, in its role as disposal agent, Morgan Stanley simultaneously was preparing to sell Veleron's Magna shares in a mass liquidation.

Tuna continued to short Magna throughout the day on September 30 and again on October 1, 2008. In all, on September 30 and October 1, 2008, Tuna shorted 352,160 shares of Magna, on Morgan Stanley's behalf, at an average price of $50.77 per share.

Between 7:00 a.m. and 9:30 a.m. on October 3, 2008 (*i.e.*, before the market opened), acting on behalf of and at the direction of BNP pursuant to the ADA, Morgan Stanley liquidated 18,671,512 Magna shares at an average price of $37.60 in an accelerated book build (the

"ABB"). Morgan Stanley covered its short positions by purchasing 360,000 shares in the ABB, thereby realizing a profit of approximately $4.59 million dollars based on its short selling. Morgan Stanley was also paid a fee of $9,466,433.50 for its services as disposal agent, and earned $590,000 in commissions as a result of the liquidation.

### B. The Knowledge of the Subpoenaed Witnesses

On September 25, 2015, the same day the parties' motions *in limine* were due to the Court, Morgan Stanley served trial subpoenas on Mr. Deripaska, Ms. Moldazhanova, Mr. van der Meer, and Mr. Yashchenko. All of the Subpoenaed Witnesses were previously deposed by Morgan Stanley, in Paris, France, in July of 2014, and the depositions were all recorded by a videographer. Further, Morgan Stanley designated substantial portions of the Subpoenaed Witnesses' deposition testimony in the Joint Pre-Trial Order (the "JPTO") submitted by the parties to the Court on September 30, 2014. *See* Declaration of Emilie B. Cooper in Support of Plaintiff Veleron Holding, B.V.'s Motion to Quash the Trial Subpoenas of Oleg Deripaska, Gulzhan Moldazhanova, and Bauke van der Meer, dated October 12, 2015 ("Cooper Decl."), Ex. 1 at 110-123, 127-147, 153-163, 168-193.

i. Mr. Yashchenko's Knowledge

During the time period relevant to the facts of this case, Mr. Yashchenko was deputy CFO at Basic Element, Veleron's ultimate parent company. *See* Cooper Decl. Ex. 2 (Yashchenko Tr.) at 13:3-5.

Of the Subpoenaed Witnesses, Mr. Yashchenko is the most knowledgeable regarding the background facts surrounding this case, and, indeed, he was the lead person representing Veleron throughout the Magna transaction. Specifically, Mr. Yashchenko has first-hand knowledge and will be able to testify at trial regarding all of the following topics:

4

- Russian Machines' strategic investment in Magna;

- the structure of the Loan and the terms of the Credit Agreement;

- that Veleron's 20 million shares of Magna were pledged as collateral for the Loan;

- Veleron's knowledge of Morgan Stanley's engagement as BNP's disposal agent pursuant to the ADA;

- the margin calls issued by BNP to Veleron;

- that Veleron informed BNP that it was not going to meet the margin call;

- that the information that Veleron was not going to meet the margin call was not public information and that Veleron expected this information would be kept confidential;

- that Veleron did not pay the margin call by the deadline imposed by BNP;

- that BNP declared an event of default after Veleron did not meet the margin call;

- that the Pledged Collateral was liquidated by Morgan Stanley as BNP's disposal agent;

- that Veleron was liable for the deficiency after the Pledged Collateral was liquidated for less than the amount outstanding under the Loan; and

- BNP's notice of default and its demand for payment from Veleron for the deficiency on the Loan following the liquidation of the Pledged Collateral.

ii. <u>Mr. Deripaska's Knowledge</u>

Mr. Deripaska is a Russian businessman and philanthropist, and the founder and Chairman of the Supervisory Board of Basic Element, a diversified industrial group and the ultimate parent entity to Veleron. During his deposition, Mr. Deripaska testified that he had very

5

little to do with the day-to-day operations of Basic Element (or, for that matter, Veleron), but instead was involved in bigger-picture strategic decisions. *See* Cooper Decl. Ex. 3 (Deripaska Tr.) at 39:2-43:7, 55:10-56:5.

While Mr. Deripaska was able to testify, at a high-level, regarding some of the background facts of this case -- for example, Russian Machines' strategic investment in Magna, that BNP issued a margin call to Veleron, that Veleron was not going to meet the margin call, that Veleron requested a restructuring of the Loan, and that the Pledged Collateral was liquidated -- Mr. Deripaska knew of much of this information second-hand, as a result of briefings by Ms. Moldazhanova and Mr. Yashchenko. *See id.* at 34:23:-35:7 (Mr. Deripaska learned of the margin call from Ms. Moldazhanova); *id.* at 43:4-7 ("I've already told you that we -- that Gulzhan [Moldazhanova] informed -- informed me that we did not have sufficient coverage for the Magna stock loan and that they had started discussing a restructuring."); *id.* at 50:15-17 ("As I've said, so far as I can recall, originally Gulzhan [Moldazhanova] informed me that we did not have sufficient coverage ratio."); *id.* at 53:2-7 (Mr. Deripaska was informed of the efforts to restructure the Loan from Ms. Moldazhanova); *see also id.* at 53:2-17 ("I'm definitely was meeting Andrey [Yashchenko], you know, quite often" with regard to restructuring negotiations); *id.* at 61:20-21 (testifying that Yashchenko himself negotiated with BNP regarding the guarantee provided by Russian Machines to BNP (the "Guarantee")); *id.* at 88:8 - 89:25 (testifying that he learned about the liquidation of the Pledged Collateral through Ms. Moldazhanova).

The vast majority of Morgan Stanley's questioning of Mr. Deripaska during his deposition focused on issues that are completely irrelevant to this case and Morgan Stanley's liability for insider trading, including (i) the corporate structure of Basic Element and Veleron,

*see id.* at 17:7-18:9, 19:12-20, 20:10-23:10; (ii) Veleron's ability to pay the margin call, *see id.* at 37:15-50:20, 72:11-78:14, 79:11-81:23; (ii) the negotiations surrounding the restructuring of the Loan, including a potential personal guarantee from Mr. Deripaska, and a potential loan from Vnesheconombank (the "VEB"), a Russian state bank, *see id.* at 53:2-58:25, 64:24-72:8; (iv) the validity of the Guarantee provided by Russian Machines to BNP, *see id.* at 59:1-64:17; and (v) the arbitration brought by BNP against Russian Machines pursuant to the Guarantee, *see id.* at 90:9-91:21. Almost all of the foregoing testimony was designated by Morgan Stanley in the JPTO, and objected to by Veleron on the grounds of Federal Rules of Evidence ("FRE") 401, 402, and 403 because this testimony is not relevant to Veleron's claim for insider trading and would, among other things, unfairly prejudice Veleron, waste the jury's time, mislead the jury, and confuse the issues. *See* Cooper Decl. Ex. 1 at 110-123.

    iii.    <u>Ms. Moldazhanova's Knowledge</u>

During the time period relevant to this case, Ms. Moldazhanova was the Chief Executive Officer of Basic Element. *See* Cooper Decl. Ex. 4 (Moldazhanova Tr.) at 10:23-11:1. Like Mr. Deripaska, Ms. Moldazhanova was able to testify, at a high-level, regarding some the background facts of this case but, as with Mr. Deripaska, her knowledge was primarily second-hand, obtained from Mr. Yashchenko. *See, e.g., id.* at 86:11-12 ("I only base my judgment on what Andrey Yashchenko tells me."); *id.* at 98:22-99:1 (when asked how she learned that the Guarantee was sent to BNP, Ms. Moldazhanova responded "most probably Yashchenko"); *id.* at 193:10-17 ("I simply get verbal notice from Andrey Yashchenko."); *id.* at 134:6-8 ("Again, I wasn't interacting with VEB. It was Andrey [Yashchenko]. So if he says that -- you probably have to ask him.").

As they did at Mr. Deripaska's deposition, Morgan Stanley's counsel focused his questioning of Ms. Moldazhanova on issues that are irrelevant to this case including: (i) the corporate structure of Basic Element and Veleron, *see id.* at 11:6-13:2, 18:13-19:12, 32:9-36:20; (ii) negotiations surrounding the restructuring of the Loan, including a possible waiver of the margin calls in exchange for the Guarantee, *see id.* at 53:7-86:12, 104:23-122:20, 124:24-125:15, 128:20-143:16, 152:5-159:20, 160:16-171:9; and (iii) the validity of the Guarantee, *see id.* at 94:23-96:1, 96:15-103:12, 143:24-152:2, 171:15-173:25. As with Mr. Deripaska, almost all of the foregoing testimony was designated by Morgan Stanley in the JPTO, and was objected to by Veleron on the grounds of FRE 401, 402, and 403. *See* Cooper Decl. Ex. 1 at 127-147.

    iv.    <u>Mr. van der Meer's Knowledge</u>

Mr. van der Meer, a resident of the Netherlands, is a director of C-Corp, a Netherlands trust office that provides management services to companies. *See id.* Ex. 5 (van der Meer Tr.) at 6:14-15, 10:18-23, 13:3-6. C-Corp was the director of Veleron. *See id.* at 13:19-14:1. In that capacity, C-Corp provided corporate services to Veleron such as preparing and filing corporate income taxes. *See id.* at 10:18-23, 15:1-6. The majority of Mr. van der Meer's knowledge concerns the corporate ownership structure of Veleron.[1] *See, e.g., id.* at 21:12-39:12. Almost all of Mr. van der Meer's testimony in this regard was designated by Morgan Stanley in the JPTO, *see* Cooper Decl. Ex. 1 at 153-163, and Veleron objected to the deposition designations on the grounds of FRE 401, 402, and 403. *See id.* Besides this limited knowledge, other than being generally aware, for example, that a margin call was issued by BNP and that BNP had declared a

---

[1] Much of Mr. van der Meer's testimony was cited by Morgan Stanley in its second motion for summary judgment to argue that Veleron did not have standing to bring its securities fraud claim. This Court emphatically rejected Morgan Stanley's standing argument in its July 22, 2015 Decision and Order.

8

default under the Credit Agreement, Mr. van der Meer does not possess any knowledge with respect to any background facts relevant to this case.

C.      **The Upcoming Trial of Veleron's Insider Trading Claim**

In its Decision and Order dated July 22, 2015, this Court denied Morgan Stanley's motion for summary judgment on Veleron's insider trading claim. *See Veleron Holding, B.V. v. Morgan Stanley*, No. 12 Civ. 5966, -- F. Supp. 3d --, 2015 WL 4503580, at *46 (S.D.N.Y. July 22, 2015) (McMahon, J.). Trial in this case is set to begin on November 2, 2015. The sole issue to be tried before the jury is whether Morgan Stanley violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by engaging in insider trading in connection with the purchase or sale of securities of Magna from September 30 through October 3, 2008. *See* Cooper Decl. Ex. 1 at 44.

## ARGUMENT

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a federal district court is required to quash any subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).[2] To determine whether undue burden exists, the Court conducts a balancing test, weighing "the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299-300 (S.D.N.Y. 2009) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008)); *see also Hermitage Global Partners LP*

---

[2] The undue burden standard applies to both trial and deposition subpoenas. *Compare Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (applying undue burden standard to trial subpoena), *with Jones v. Hirschfeld*, 219 F.R.D. 71, 74, 78 (S.D.N.Y. 2003) (applying undue burden standard to deposition subpoena).

*v. Prevezon Holdings Ltd.*, No. 13 Civ. 6326, 2015 WL 728463, at *3 (S.D.N.Y. Feb. 19, 2015). Thus, a subpoena should be quashed where it "pursues material with little apparent or likely relevance to the subject matter," or where the information sought is unreasonably cumulative and duplicative of other testimony already taken. *See Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005); *Eugenia VI Venture Holdings, Ltd. v. Chabra*, No. 05 Civ. 5277, 2006 WL 1293118, at *2 (S.D.N.Y. May 10, 2006). The party issuing the subpoena -- here, Morgan Stanley -- bears the burden of "demonstrat[ing] that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Koch v. Pechota*, No. 10 Civ. 9152, 2013 WL 5996061, at *1 (S.D.N.Y. Nov. 8, 2013) (citations omitted).

I.  **THE TRIAL SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SEEK DUPLICATIVE AND NON-RELEVANT TESTIMONY**

In order for Veleron to prove its claim of insider trading, it must establish that: (i) Morgan Stanley possessed material non-public information; (ii) which Morgan Stanley had a duty to keep confidential; and (iii) that Morgan Stanley breached its duty by trading while in possession of this material non-public information. *Veleron Holding, B.V.*, 2015 WL 4503580, at *18 ("To prevail on a misappropriation insider trading claim, a plaintiff must establish (1) that the defendant possessed material, nonpublic information; (2) which he had a duty to keep confidential; and (3) that the defendant breached his duty by acting on or revealing the information in question.") (internal citations and quotations omitted). Because Morgan Stanley's liability depends on its own conduct, Veleron's witnesses have little, if any, relevant knowledge other than concerning the background facts surrounding this case. Accordingly, for the reasons more specifically set forth below, the subpoenas directing Mr. Deripaska, Ms. Moldazhanova and Mr. van der Meer to appear at trial should be quashed.

10

### A. To the Extent Mr. Deripaska or Ms. Moldazhanova Can Offer Any Relevant Testimony, It is Duplicative of Mr. Yashchenko's Testimony

Veleron intends to produce Mr. Yashchenko to provide in-person testimony at trial. As explained above, Mr. Yashchenko is the most knowledgeable of the Subpoenaed Witnesses concerning the background facts of this case, and, indeed, was the lead person representing Veleron throughout the Magna transaction. Further, Mr. Yashchenko led the negotiation efforts surrounding the restructuring of the Loan, and was the individual with the most contact with BNP, Morgan Stanley, and the other banks during this time period. Mr. Yashchenko has first-hand knowledge to testify at trial regarding all of the following topics: Russian Machines' strategic investment in Magna; the structure of the Loan; the Magna shares that were pledged as collateral for the Loan; Morgan Stanley's engagement as BNP's disposal agent pursuant to the ADA; the margin calls issued by BNP to Veleron; that Veleron informed BNP that it was not going to meet the margin call; that the information that Veleron was not going to meet the margin call was not public information and Veleron expected this information would be kept confidential; that Veleron did not meet the margin call deadline; that BNP declared an event of default; and that the Pledged Collateral was liquidated by Morgan Stanley as BNP's disposal agent.

As explained to Morgan Stanley's counsel during their depositions, because Mr. Yashchenko reported to Ms. Moldazhanova who, in turn, reported to Mr. Deripaska, any information or knowledge possessed by Mr. Deripaska or Ms. Moldazhanova was passed on by Mr. Yashchenko. Thus, to the extent that Mr. Deripaska or Ms. Moldazhanova can offer any testimony regarding the background facts of this case, their testimony would be duplicative of Mr. Yashchenko's testimony. Accordingly, the trial subpoenas compelling the attendance of Mr. Deripaska and Ms. Moldazhanova should be quashed. *See, e.g., Eugenia VI Venture Holdings,*

11

2006 WL 1293118, at *2 (quashing subpoena where testimony sought was "unreasonably cumulative and duplicative" of other testimony already taken); *Kirschner*, 2005 WL 1214330, at *2 (granting motion to quash subpoena for trial testimony where witnesses' testimony was irrelevant and duplicative); *see also Deluca v. Bank of Tokyo-Mitsubishi UFJ*, No. 05 Civ. 639, 2007 WL 2589534, at *4 (S.D.N.Y. Aug. 30, 2007) (granting protective order where witness had "neither personal knowledge . . . nor unique knowledge" of relevant facts).

Indeed, it would be a waste of the jury's time for it to hear the same background facts -- which provide useful context but do not bear directly on Morgan Stanley's liability -- from multiple witnesses. It would also be unduly burdensome for Mr. Deripaska and Ms. Moldazhanova to be compelled to travel from Russia to the United States to attend trial simply to offer duplicative and cumulative testimony. As such, a balancing of the interests involved weighs heavily in favor of quashing the subpoenas directed at Mr. Deripaska and Ms. Moldazhanova. *See, e.g.*, *Kirschner*, 2005 WL 1214330, at *2; *Eugenia VI Venture Holdings*, 2006 WL 1293118, at *2; *Hermitage Global Partners LP*, 2015 WL 728463, at *4-5.

### B. The Remainder of Mr. Deripaska's and Ms. Moldazhanova's Testimony is Not Relevant to Veleron's Insider Trading Claim

As explained above, to the extent that Mr. Deripaska or Ms. Moldazhanova can offer any relevant testimony regarding the background facts of this case, it would be duplicative of the testimony that Mr. Yashchenko will offer at trial. This is reason enough to quash their trial subpoenas. However, the trial subpoenas should be quashed for an additional reason: the remainder of Mr. Deripaska's and Ms. Moldazhanova's testimony is not relevant to Morgan Stanley's culpability for insider trading. Nearly all of the topics covered during the depositions of Mr. Deripaska and Ms. Moldazhanova, as well as the testimony designated by Morgan Stanley in the JPTO -- including, but not limited to, the corporate structure of Basic Element and

12

Veleron, potential payment of the margin call, negotiations surrounding the restructuring of the Loan, and the validity of the Guarantee -- have absolutely no bearing on whether Morgan Stanley engaged in insider trading. As a result, Morgan Stanley cannot meet its burden to demonstrate that the information sought by the trial subpoenas is "relevant and material to the allegations and claims" to be tried in this case. *See Koch*, 2013 WL 5996061, at *1-2 (quashing subpoena for trial testimony where witness had "no relevant knowledge to any issue pertaining to either of plaintiff's actions"); *Kirschner*, 2005 WL 1214330, at *2 (granting motion to quash subpoena for trial testimony where witnesses testimony was irrelevant); *Jones v. Hirschfeld*, 219 F.R.D. 71, 77-78 (S.D.N.Y. 2003) (granting motion to quash subpoena for testimony where witness had "no relevant information to offer"). The trial subpoenas of Mr. Deripaska and Ms. Moldazhanova should therefore be quashed because there is little interest furthered by demanding compliance with a subpoena seeking testimony that is irrelevant to this case. *See, e.g., Koch*, 2013 WL 5996061, at *3; *Kirschner*, 2005 WL 1214330, at *2; *Hermitage Global Partners LP*, 2015 WL 728463, at *4-5.

        **C.**     **Mr. van der Meer's Testimony is <u>Not Relevant to Veleron's Insider Trading Claim</u>**

As discussed above, Mr. van der Meer's knowledge concerns only the corporate ownership structure of Veleron. *See e.g.*, Cooper Decl. Ex. 5 (van der Meer Tr.) at 21:12-39:12. This narrow topic has no relevance to Morgan Stanley's liability for insider trading, or any affirmative defenses that Morgan Stanley could assert.[3] Accordingly, the subpoena compelling

---

[3] To the extent that the Court deems the corporate ownership structure of Veleron to be relevant, this topic can be sufficiently testified to by Mr. Yashchenko, and thus Mr. van der Meer's testimony would be duplicative. *See, e.g., Kirschner*, 2005 WL 1214330, at *2; *Eugenia VI Venture Holdings*, 2006 WL 1293118, at *2; *Hermitage Global Partners LP*, 2015 WL 728463, at *4-5.

13

Mr. van der Meer to attend trial should be quashed. *See, e.g.*, *Koch*, 2013 WL 5996061, at *3; *Kirschner*, 2005 WL 1214330, at *2; *Hermitage Global Partners LP*, 2015 WL 728463, at *4-5.

### II. MR. DERIPASKA SHOULD BE PERMITTED TO TESTIFY AT TRIAL THROUGH HIS DEPOSITION TESTIMONY OR, IF LIVE TESTIMONY IS REQUIRED, VIA VIDEO CONFERENCE

As the Court may be aware, it is unclear whether Mr. Deripaska will be granted a visa by the United States government to enter the country and thus may be unavailable to appear at trial.[4] Accordingly, to the extent that Mr. Deripaska is required to testify at trial, Morgan Stanley should be required to use his videotaped deposition testimony. *See, e.g.*, *Gale v. Stallone*, No. 91 Civ. 3467, 1996 WL 197776, at *5 (S.D.N.Y. Apr. 23, 1996) (permitting deposition testimony in lieu of live appearance where witness was out of the country); *LNC Investments, Inc. v. First Fidelity Bank*, No. 92 Civ. 7584, 2000 WL 1290615, at *4 (S.D.N.Y. Sept. 12, 2000) (permitting deposition testimony at trial where witness was unavailable); *see also GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 92 n.20 (S.D.N.Y. 2013) (use of deposition testimony is permitted as substitute for live testimony where witness is unavailable). Alternatively, to the extent that Mr. Deripaska is required to provide live testimony at trial, he should be permitted to testify via video conference. *See, e.g.*, *Virtual Architecture, Ltd. V. Rick*, No. 08 Civ. 5866, 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012) (foreign witness permitted to testify via video conference); *see also Dagen v. CFC Grp. Holdings Ltd.*, No. 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003) (foreign witnesses who could not obtain visas permitted to testify via telephonic conference).

---

[4] Mr. Deripaska has recently filed a visa application with the U.S. Department of State, and that visa application is still pending.

14

**CONCLUSION**

Accordingly, for all of the foregoing reasons, Veleron's motion to quash the trial subpoenas of Oleg Deripaska, Gulzhan Moldazhanova, and Bauke van der Meer should be granted in its entirety. Alternatively, to the extent that Mr. Deripaska is required to provide testimony at trial, Veleron respectfully requests that the Court permit Mr. Deripaska to testify through his deposition testimony or, if live testimony is required, via video conference.

Dated: New York, New York
       October 12, 2015

Respectfully,

By: _____
    Aaron H. Marks
       (amarks@kasowitz.com)
    Ronald R. Rossi
       (rrossi@kasowitz.com)
    Emilie B. Cooper
       (ecooper@kasowitz.com)
    KASOWITZ, BENSON, TORRES
       & FRIEDMAN LLP
    1633 Broadway
    New York, New York 10019
    Tel.: (212) 506-1700

*Attorneys for Plaintiff Veleron Holding, B.V.*

15